UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Jerome Griffin

    v.                                                  Civil No. 06-486-JD
                                                          Opinion No. 2007 DNH 008
United States of America


O R D E R

The petitioner filed a motion pursuant to 28 U.S.C. § 2255 on December 26, 2006.


Background

On September 25, 2002, the petitioner waived indictment and pled guilty to a second superceding information charging him with conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base crack (count 1), and with distribution of crack cocaine (counts 2, 3 and 9).  United States v. Jerome Griffin, 02-CR-22-JD.  The petitioner's plea was entered pursuant to a written plea agreement between him and the government dated September 25, 2002.  As part of that agreement, the government and petitioner entered into the following binding stipulation pursuant to Fed. R. Crim. P. 11(e)(1)(C):

      5-1.  Stipulations Pursuant to Rule 11(e)(1)(C)

          The Government and defendant have reached the following stipulation pursuant to Rule 11(e)(1)(C), Federal Rules of Criminal Procedure:

>       a.   The parties agree that the Government's evidence will establish that the defendant's base offense level (U.S.S.G. 2D1.1) should be premised on the distribution of in excess of 1.5 kilograms of cocaine base ("crack") (Base Offense Level 38 (U.S.S.G. 2D1.1(c)(1) (1.5 KG or more of Cocaine Base)).
>       The above stipulation is intended by the parties to be "binding" under Rule 11(e)(1)(C). By using the word "binding" under Rule 11(e)(1)(C), the parties mean that if the Court cannot or will not accept the stipulation, and finds that the drug amount is greater or more serious than stipulated, the defendant will be allowed the choice of withdrawing his guilty plea and demanding a trial on the original (or other) charge(s).  The defendant will not be allowed to withdraw his plea for any other reason.

Plea Agreement, document #70, pp. 9-10.

During the plea colloquy, the Court explained the binding stipulation to the petitioner and pointed out specifically that offense level 38 with a Criminal History Category of I would result in a guideline range of approximately 19.5 years to 24.1 years, "well in excess of the mandatory minimum."  Transcript of Plea, September 25, 2002, document #97, pp. 10-11.  At that time, the parties and the court were laboring under the assumption that 10 years was the mandatory minimum.

When the sentencing hearing was held on December 20, 2002, the issue of a 10 versus 20-year mandatory minimum was raised. The court gave the petitioner the opportunity to withdraw his

plea if the 20-year mandatory minimum was applicable and granted a continuance so the parties could try to resolve the issue.

On January 13, 2003, the petitioner filed an assented to motion to withdraw his guilty plea (document #90).  At a hearing held on that date, the government indicated that it would be seeking a 10-year rather than a 20-year mandatory minimum sentence.  Defense counsel wanted more time to review the matter with his client and to decide whether to go to trial or proceed with sentencing.

On February 5, 2003, the matter was scheduled for sentencing again.  The court was informed that the petitioner decided to withdraw his motion to withdraw his guilty plea and to proceed with sentencing.  The following colloquy took place at that hearing:

> BEFORE THE COURT
>
> THE COURT:     The Court notes in the file, Mr. Wiberg, that the defendant has decided to withdraw his motion to withdraw his guilty plea.  Is that correct?
> MR. WIBERG:    That's correct, your Honor.
> THE COURT:     And you have reviewed that matter with the defendant?
> MR. WIBERG:    Entirely, your Honor.
> THE COURT:     And he has assessed and you have assessed with him the risks and the benefits of either proceeding with a motion or withdrawing it?
> MR. WIBERG:    Yes, Judge, and the withdrawal is mostly based on the fact that the government is no longer talking about the 20-year mandatory minimum.
> THE COURT:     All right, Mr. Griffin, then the Court understands that you've considered this matter

>        and have decided to proceed based on your guilty plea.
>        Is that correct?
>        THE DEFENDANT: Yes, Judge.

Transcript, Sentencing Hearing, February 5, 2003, p.2.

What is also significant is that during the sentencing hearing that followed, the quantity of drugs attributable to the petitioner was specifically discussed.

>        THE COURT:     All right.  The Court has before it
>        a presentence investigation report and two addenda.
>        Have you had a chance to review those with your client,
>        Mr. Wiberg?
>        MR. WIBERG:    Yes, I have, your Honor.
>        THE COURT:     Any exceptions or objections?
>        MR. WIBERG:    No.  The only minor issue was the issue
>        raised in I believe paragraph 26, and it's really kind
>        of a distinction without a difference because when Mr.
>        Griffin first saw that Nathaniel Ceasar was claiming 60
>        ounces of crack cocaine per month, he thought that that
>        was somewhat – well, he thought it was greatly inflated
>        from his own personal knowledge.  However, after
>        looking at the situation and discussing what Mr.
>        Griffin actually knew of personally as being sold
>        either by himself or in transactions of which he was
>        aware, the amount that was involved still comes above
>        the 1.5 kilograms that establishes the base offense
>        level of 38 which we're talking about to start out.  So
>        it's really a distinction without a difference.
>            His take when he first saw it was that Mr. Ceasar
>        was attempting to inflate the amount involved because
>        he expected to get a benefit back on the understanding
>        that the government would be better impressed for the
>        purposes of the 5K1.1 motion with a debriefing, then
>        inflated the amounts.  He's got no question at all that
>        significant quantities of cocaine was distributed with
>        his knowledge and that it is in excess of the 1.5
>        kilograms necessary to establish the base offense
>        level.
>            Other than that, Judge, no problem with the
>        report.

> THE COURT:    All right.  The Court accepts the
> factual findings and guideline applications contained
> in the Presentence Investigation Report.  That results
> in a total offense level of 35, a criminal history
> category of three, yielding a guideline range of 210
> to 262 months.
>     Does the government have a recommendation within
> the range?

The Presentence Investigation Report ("PIR") established the base offense level at 38 which was consistent with the parties' plea agreement.  That level was reduced by 3 levels making the total offense level 35.  At criminal history category III, the guideline range was 210 to 262 months.  The court imposed a prison sentence of 210 months which was at the bottom of the guideline range.

On August 8, 2003, the petitioner filed a motion pursuant to 28 U.S.C. § 2255 claiming that his counsel failed to file an appeal on his behalf.  Following an evidentiary hearing on November 12, 2003, at which the petitioner was represented by Federal Defender Bjorn Lange, the court vacated the sentence imposed on February 5, 2003, and reimposed it, effective February 5, 2003, to enable the petitioner to pursue an appeal.

The petitioner appealed and on June 16, 2005, the appeals court remanded the case for resentencing under <u>Booker</u>.  Resentencing was held on October 5, 2005.  The petitioner was again represented by Federal Defender Lange.  There was no objection by defense counsel to the PIR.  The base offense level

was 38.  Taking into account acceptance of responsibility and criminal history category III, the advisory guideline range was 210 to 262 months.  Petitioner's counsel made a very able <u>Booker</u> argument for a sentence of 120 months, the mandatory minimum under the law.  The government recommended a sentence of 210 months.  The court imposed a sentence of 198 months.  The petitioner appealed and the sentence was upheld.

### Present Motion

The petitioner claims that at his resentencing on October 5, 2005, he asked his counsel to object to the statement of co-conspirator, Nathaniel Caesar, given to the authorities after his arrest, concerning the amount of crack cocaine he had sold.  Counsel allegedly said nothing could be done about it.  No objection was lodged at the resentencing.  The court again accepted the factual findings and guideline applications contained in the PIR. Petitioner claims that counsel's failure to object meant that the "aggravating drug quantity increased my sentencing guidelines exposure."  He also claims Caesar's statements were hearsay and given after the conspiracy had ended and therefore should not be relied on.

The petitioner overlooks several important undisputed historical facts about his case.  First, in his written plea

agreement, he entered into a binding stipulation with the government concerning the quantity of drugs and the base offense level (38) that would be applicable to him, and the court specifically reviewed this with him during the plea colloquy. The PIR was consistent with the binding stipulation and the court accepted that stipulation when it accepted the guideline calculations in the PIR.  Secondly, the defendant pled guilty to Count I which alleged a conspiracy to distribute and to possess with intent to distribute in excess of 50 grams of cocaine base crack and in excess of five kilograms of cocaine hydrochloride. At the plea colloquy the petitioner accepted the government's offer of proof as to the factual basis for the elements of the offense.  And thirdly, when the petitioner was sentenced the first time on February 5, 2003, his counsel mentioned that the petitioner was concerned about whether Nathaniel Caesar was inflating the drug quantities for purposes of a 5K.1 motion, but in the end the petitioner did not question that significant quantities of cocaine were distributed and that they were in excess of the 1.5 kilograms needed to establish the base offense level of 38.

   The bottom line is that the petitioner agreed to the quantity of drugs for which he was to be held responsible and to the base offense level of 38.  His advisory guideline range was

calculated based on what he agreed to, and Nathaniel Caesar's statements did not impact that calculation in any way.  By the petitioner's own admissions large quantities of drugs were involved and this was taken into consideration in imposing sentence, a sentence that was below the advisory guideline range for reasons stated by the court.

   The petitioner's claims of ineffective assistance of counsel are without legal or factual merit.

   Petition dismissed.


   SO ORDERED.

                                     /s/ Joseph A. DiClerico, Jr.
                                     Joseph A. DiClerico, Jr.
                                     United States District Judge

January 24, 2007

cc:  Jerome Griffin, pro se